UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

ERIK TRELL, M.D., Ph.D.,                                           04-CV-0030E(Sr)

               Plaintiff,

    -vs-                                                                      MEMORANDUM

AMERICAN ASSOCIATION OF THE                                      and
  ADVANCEMENT OF SCIENCE,
*Science*NOW and                                                      ORDER[1]
DANA MACKENZIE,

              Defendants.

———————————————————

## BACKGROUND

On April 8, 2004, plaintiff, Erik Trell ("Trell"), filed the Amended Complaint herein (Dkt. #3), based on diversity jurisdiction (28 U.S.C.§1332(a)), alleging, *inter alia*, breach of implied contract against defendants American Association of the Advancement of Science ("AAAS"), *Science*NOW and Dana Mackenzie, PhD ("Mackenzie").  Pursuant to Stipulation and Order (Dkt. #7), the matter was stayed on June 9, 2004, pending the outcome of a state court action filed by plaintiff containing the same allegations and causes of action.

On January 30, 2006, defendants made a Motion to Dismiss the Amended Complaint (Dkt. #8), based in part on the arguments put forth by it in the state court action which resulted in the dismissal of the action in that court which was affirmed

———————————

      [1]This decision may be cited in whole or in any part.

by the New York State Supreme Court, Appellate Division, Fourth Department.  As plaintiff had made a request for review to the New York Court of Appeals, the motion was adjourned *sine die* until the Court was notified that the Court of Appeals had denied plaintiff's request, which occurred on May 2, 2006.  Thereafter, plaintiff filed his response to the motion before this Court on June 23, 2006 (Dkt. ##10, 12), defendants filed their reply thereto on June 28, 2006 (Dkt. #14), oral argument was held thereon on June 30, 2006 and the matter was submitted to the Court for decision.  Based on the above referenced submissions by the parties, and for the reasons stated below, defendants' motion will be granted and the case dismissed.

## FACTS

Trell is a professor and medical doctor residing in Linkoping, Sweden.  His only connection to New York is as a trustee of a business trust that was established in Buffalo but has no association with the instant lawsuit.  Defendant AAAS is a not-for-profit corporation, incorporated under the laws of Massachusetts, with its headquarters located in Washington, D.C..  Defendant, *Science*NOW is AAAS's website, serving as a daily internet news service[2].  Defendant Mackenzie is a mathematician and freelance science and mathematics journalist residing in

---

[2]AAAS maintains that *Science*NOW is improperly named as a defendant herein because, as simply a website with no corporate existence separate from AAAS, it is not a legal entity. Plaintiff does not seem to dispute this and the Amended Complaint, in fact, refers to *Science*NOW as AAAS's "daily internet news service".  As the matter will be dismissed in its entirety, the Court need not address this issue directly.

California and a frequent contributor to AAAS's published scholarly journal/magazine, *Science*.

Plaintiff alleges that in 1998 he submitted a manuscript to defendants regarding a famous mathematical problem[3], asking for its review and publication in *Science*. He further claims that he did this in response to an internet advertisement located on the *Science*NOW website that sought "news tips" and stated that the tip would be investigated for its suitability as a news item in *Science*NOW or perhaps even an article in *Science*. AAAS declined to publish the manuscript purportedly because it determined that it was not "news" and did not appear to solve the mathematical problem. Mackenzie allegedly initially screened the manuscript for AAAS. It is undisputed that none of these acts occurred in New York.

The gravamen of all of Trell's claims in the Amended Complaint revolves around the contract claim. Claims of fraud, misappropriation of property, breach of fiduciary duty, unfair competition, conversion, unfair competition, conspiracy with intent to defraud necessarily stem from the breach of contract claim.

In response to the instant motion, Trell asserts that the advertisement on the website created a unilateral contract and his submission of the manuscript was his performance under that contract which defendants then breached in a number of

---

[3]The manuscript purported to solve the mathematical problem, popularly known as Beal's Conjecture, for which a cash prize of between $5,000 and $70,000 was offered by a banker in Dallas, Texas for whom the problem was named.

ways (which need not be discussed in detail herein). Trell's papers also interchangeably describe the formation of the contract with the advertisement as the offer and the submission of the manuscript as the acceptance.

With respect to jurisdiction and venue, Trell alleges that the basis for jurisdiction in New York over AAAS and *Science*NOW is the fact that AAAS issues memberships to New York residents, distributes its journal, *Science*, throughout the state, is affiliated with New York organizations[4] and the fact that the *Science*NOW website is accessible within the state. This is also the asserted basis for venue here (as well as Trell's association with the aforementioned business trust, wholly unconnected to the instant lawsuit). The basis for personal jurisdiction over Mackenzie in New York is simply that he has written articles that have been published or reproduced by AAAS and/or *Science*NOW. Mackenzie seeks dismissal for lack of personal jurisdiction. AAAS and *Science*NOW seek dismissal for failure to state a claim and, if not dismissed on those grounds, seeks a *forum non conveniens* transfer to the District of Columbia.

---

[4]This affiliation theory is based on Trell's assertion that the New York Academy of Sciences has its historical origins in AAAS. Trell further asserts that the basis for the New York Academy of Sciences "historical origins" is that AAAS, having been founded in 1848, is the largest non-governmental organization of its kind in the world and is among the oldest "societies" in America. It is therefore maintained that many of today's scientific societies (*e.g.*, the New York Academy of Sciences) necessarily sprung from the AAAS model and AAAS members.

**DISCUSSION**

*The motion to dismiss for lack of personal jurisdiction*

The motion to dismiss the Amended Complaint as to defendant Mackenzie for lack of personal jurisdiction is made pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure (F.R.Cv.P.). "Personal jurisdiction of a federal court over a non-resident defendant is governed by the law of the state in which the court sits--subject, of course, to certain constitutional limitations of due process." *Kronisch* v. *United States*, 150 F.3d 112, 130 (2d Cir. 1998) (citation and internal quotation marks omitted); *see also Wiwa* v. *Royal Dutch Petroleum Co.*, 226 F.3d 88, 94 (2d Cir. 2000). Plaintiff bears the burden of proving personal jurisdiction over an out-of-state defendant. *Kernan* v. *Kurz-Hastings, Inc.,* 175 F.3d 236, 240 (2d Cir. 1999). Prior to discovery, a plaintiff challenged by a jurisdiction-testing motion may defeat the motion by making a prima facie showing of jurisdiction that is, by pleading legally sufficient allegations of jurisdiction. *See Jazini* v. *Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir.1998). However, the Amended Complaint herein pleads no jurisdictional allegations against Mackenzie and may therefore be dismissed as against him on that basis alone. *See Brought to Life Music, Inc.* v. *MCA Records, Inc.,* 2003 WL 296561 (S.D.N.Y. 2003); *Clerc* v. *Cantoni, Inc.,* 2002 WL 1482769 (S.D.N.Y. 2002). It is evident that the allegations in the Amended Complaint, which the Court deems to be true for purposes of this motion, do not establish personal jurisdiction over Mackenzie.

Even if sufficiently plead, there is no jurisdiction over Mackenzie. In response to the motion herein, Trell argues that Mackenzie is subject to general personal jurisdiction under New York Civil Practice Law and Rules Section 301 (CPLR §301) through his association with AAAS, which it is alleged is doing business in the state. Plaintiff asserts no other basis for personal jurisdiction over Mackenzie, stating definitively only that "AAAS's presence in New York was the presence of the defendant Dana Mackenzie". (Dkt. #10 - 1, p. 37).[5]

CPLR §301 provides that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore.". While it is well settled that a *foreign corporation* that is 'doing business' in New York is considered 'present' in the state and can be subject to general jurisdiction under CLPR §301 [*Wiwa*, *supra*, 226 F.3d at 95; *Landoil Resources Corp.* v. *Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1043 (2d Cir.1990); *Hoffritz for Cutlery, Inc.* v. *Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir.1985); *Tauza* v. *Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917)], the law is unclear with respect to whether a non-domiciled *person* can be subject to CPLR §301 jurisdiction on that same 'doing business' basis. *See Hoffritz, supra* at 58 -

---

[5]Jurisdiction under CPLR §301 is 'general jurisdiction' in that it renders a defendant subject to suit in New York on *any* cause of action, whether or not it is related to any transaction here. New York's alternative long arm statute, CPLR §302, is 'transactional jurisdiction' in that a defendant who transacts business in New York is subject to suit here only on a cause of action arising from that transaction. CPLR §302 is not applicable here, nor does plaintiff argue that it is, because none of the claims in the Amended Complaint arose out of any acts within the state. *See generally, Niagara Mohawk Energy Mktg.* v. *Energy Power Mktg. Corp.,* 270 A.D.2d 872, 873, 706 N.Y.S.2d 794 (4th Dep't 2000) (There is no jurisdiction under CPLR § 302(a)(1) or (a)(3) where "there was no New York transaction out of which any of the causes of action arise").

59 (acknowledging that the question of subjecting an individual 'doing business' in New York to CPLR §301 general jurisdiction is unsettled, but not deciding the question because the doing business standard was not met in that case); *Jacobs* v. *Felix Bloch Erben Verlag fur Buhne Film und Funk KG*, 160 F. Supp. 2d 722, 732 (S.D.N.Y. 2001) (same); *Laufer* v. *Ostrow*, 55 N.Y.2d 305, 313, 449 N.Y.S.2d 456 (1982) (suggesting that CPLR §301 may be applicable to 'doing business' individuals in limited instances, but also not deciding the question because the New York contacts with the individual were too insubstantial); *Nilsa B.B.* v. *Clyde Blackwell H.*, 84 A.D.2d 295, 445 N.Y.S.2d 579 (2d Dep't 1981) (holding that CPLR §301 was not intended to reach individuals); *but see ABKCO Industries, Inc.* v. *Lennon*, 52 A.D.2d 435, 384 N.Y.S.2d 781 (1st Dep't 1976)(found "an exception to the norm" and applied a "departure from established principle and precedent" because the defendant, a member of The Beatles, exploited his musical recordings through New York accountants and attorneys whom he had retained on a continuing basis).

Like the courts in *Hoffritz*, *Jacobs* and *Laufer*, this Court finds it "unnecessary to resolve this issue [in the instant case] because, even accepting the possibility that section 301 'doing business' jurisdiction may properly exist over an individual *** there has been an insufficient showing to make out even a prima facie case for such jurisdiction here." *Hoffritz*, 763 F.2d at 58.

The Court notes initially that neither party has requested limited jurisdictional discovery in this case, nor is there a need for any such discovery.  The jurisdictional factors discussed herein are wholly undisputed.

The 'doing business' standard of CPLR §301 is a stringent one[6], requiring a plaintiff to show that a defendant engaged in "continuous, permanent, and substantial activity in New York." *Landoil,* 918 F.2d at 1043.  "New York courts, in applying the pragmatic test for section 301 jurisdiction, have focused upon factors including: the existence of an office in New York; the solicitation of business in the state; the presence of bank accounts and other property in the state; and the presence of employees of the foreign defendant in the state." *Hoffritz*, 763 F.2d at 58 (citations omitted).  None of these factors is present in the instant case.

Mackenzie has been a resident of California since 1996 and, prior to that, he lived in Ohio.  He has never lived in New York, has never maintained an office here, has no bank account, property or employees here.  The aggregate of his contacts with New York consist of occasionally writing articles for a magazine whose offices are located in New York, his writing for AAAS[7] who purportedly does business in New

---

[6]It is much more demanding than the 'transacting business' standard of CPLR §302. See, *Hoffritz, supra*, 763 F.2d at 58 - 59 ("The showing necessary for a finding that defendant "transacted business" and is suable on a cause of action arising from that transaction is considerably less than that needed to establish defendant's 'doing business,' which renders the defendant subject to suit on even an unrelated cause of action.") (citations omitted).

[7]It is undisputed that Mackenzie is not an employee of AAAS — he is a mathematician and freelance writer who regularly contributes to AAAS's scholarly magazine, *Science*.

York and he had a book published by a New York based publishing company.  Trell disputes none of this and only asserts that it is Mackenzie's association with AAAS that confers general personal jurisdiction upon him pursuant to CPLR §301.   The Court finds that, even assuming CPLR §301's applicability, Mackenzie's affiliation with AAAS is wholly insufficient to establish personal jurisdiction over him.  Not only is it entirely lacking in the indicia required by the 'doing business' standard encompassed above, but courts, have expressly held that this type of associational connection through another party is insufficient to confer such jurisdiction under CPLR §301.  *See, e.g. Kersten* v. *United Refining Inc.*, 2004 WL 2202565 at *2 (W.D.N.Y. 2004) (Merely alleging the existence of contracts with entities that are either located in or licensed to do business in New York is insufficient to establish that defendant was "doing business" within the meaning of CPLR § 301*), citing Reers* v. *Deutsche Bahn AG*, 320 F. Supp. 2d 140, 150 (S.D.N.Y. 2004) ("The existence of contractual relationships with entities that happen to have operations in New York does not establish §301 jurisdiction ∗∗∗."); *Insurance Co. of Penn.* v. *Centaur Ins. Co.*, 590 F. Supp. 1187, 1189 (S.D.N.Y. 1984) ("The mere existence of a business relationship with entities within the forum state is insufficient to establish presence."); *see also Big Apple Pyrotechnics and Multimedia Inc.* v. *Sparktacular Inc.*, 2007 WL 747807 at *4 (S.D.N.Y. 2007)(Even when applying the 'doing business' rule of CPLR §301 to individuals, courts hold that this type of associational connection is insufficient); *Brinkmann* v. *Adrian Carriers, Inc.*, 29 A.D.3d 615, 617, 815 N.Y.S.2d 196, 199 (2nd

Dept. 2006) (same); *Mantello* v. *Hall*, 947 F. Supp. 92, 98 - 99 (S.D.N.Y.1996) (same). The Amended Complaint as against defendant Mackenzie shall be dismissed in its entirety for lack of personal jurisdiction.[8]

*The motion to dismiss for failure to state a claim*

The motion to dismiss for failure to state a claim is made pursuant to F.R.Cv.P. 12(b)(6) with respect to each and every claim asserted in the Amended Complaint. When considering a motion to dismiss pursuant to F.R.Cv.P. 12(b)(6), the Court "must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor" (*Phelps* v. *Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002), *quoting Hernandez* v. *Coughlin*, 18 F.3d 133, 136 (2d Cir.1994)) and the motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957). As such, the Court is not concerned with whether plaintiff may ultimately succeed on his claims but must "assess the legal feasibility of the complaint." *Cooper* v. *Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).

However, any allegations in a complaint that are not factual and consist chiefly of argument or conclusion will not be given this deferential consideration. *See Kowal* v. *MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)("[T]he court need not

---

[8]The Court notes that it is not entirely certain that CPLR §301 general jurisdiction has been established over the remaining defendants, but has not examined the issue as no motion pursuant to F.R.Cv.P. 12(b)(2) has been made on behalf of these parties.

accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations.") (*citing Papasan* v. *Allain*, 478 U.S. 265, 268 (1986))("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation."). Hence, a complaint that largely consists of "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Wolff* v. *Rare Meduim, Inc.,* 171 F. Supp. 2d 354, 357 (S.D.N.Y. 2001) (*citing Gebhardt* v. *Allspect, Inc.*, 96 F. Supp. 2d 331, 333 (S.D.N.Y.2000)(other citations omitted).  The Court finds that the Amended Complaint herein contains many such allegations and legal conclusions couched as factual allegations and shall consider only those true factual allegations as the Court may find them.

The Contract Claim

Initially, the Court notes that the parties disagree as to what choice of law should be applied.  With respect to the contract claim, this choice of law question cannot be resolved until after the Court shall have determined whether the *Science*NOW advertisement was an offer *vel non*.  "Resolution of this issue requires consideration of principles of contract law that are not limited to the law of any one state$_{***}$ [and] implicate questions of contract law 'deeply ingrained in the common law of England and the States of the Union.'" *Leonard* v. *Pepsico, Inc.*, 88 F. Supp. 2d 116, 122 (S.D.N.Y. 1999)(internal citation omitted), *aff'd* 210 F.3d 88 (2d Cir. 2000).  It is upon these principles that the Court will examine this issue.

With respect to the formation of a contract, the Court finds that the relevant facts are contained in paragraphs 26 through 28 of the Amended Complaint.  In those paragraphs, plaintiff alleges that "AAAS provides a daily news service – *Science*NOW, as one of its 'Web products'", that "[i]n one of its internet advertisement [sic] for 'new [sic] tips'", *Science*NOW indicated that "its news team would investigate any 'tip' submitted that was suitable for an item in *Science*NOW, and that the same might even lead to a story in the print version of defendant AAAS's *Science* magazine" and that in response to this advertisement, "[p]laintiff submitted his manuscript to defendant *Science*NOW, entitled 'Reproving Fermat's Last Theorem: also confirming Beal's and related conjectures'".

Having reviewed the Amended Complaint, the Court finds that, upon the facts as alleged in the Amended Complaint, this claim must be dismissed because no contract was formed.  Quite simply, the Court finds that the advertisement for "news tips" on the *Science*NOW website cannot be construed as an offer, nor did it in any way create a unilateral contract.  Statements that urge members of the general public to take some action in response thereto, as is clearly depicted in the Amended Complaint herein, are commonly characterized as advertisements.[9]  Advertisements are not offers — they invite offers.  Likewise, responses to advertisements are not acceptances — they are offers.  *See Mesaros* v. *United States*, 845 F.2d 1576, 1580-81

---

[9]The Amended Complaint unequivocally characterizes the statements as an advertisement.

(Fed.Cir.1988); *Leonard supra* at 122 - 123 (In general, advertisement does not constitute contractual offer and is not transformed into an enforceable contractual offer merely by a potential offeree's expression of willingness to accept it); Restatement (Second) of Contracts §26[10].  At best, it was Trell's submission of the manuscript that was the offer, which Trell clearly admits defendants declined to accept[11].  *See Leonard*, *supra* at 124[12].  This is the controlling law.  The Court finds no

---

[10]*See also Rhenalu* v. *Alcoa, Inc.,* 224 F. Supp. 2d 773 (D. Del. 2002) (Advertisements, catalogs, and other promotional materials are generally considered invitations to solicit offers or enter into a bargain, not offers themselves.)*; MLMC, Ltd*. v. *Airtouch Communications, Inc*., 215 F. Supp. 2d 464, 478 (D.Del. 2002) (Advertisements, catalogs, and other promotional materials are generally considered invitations to solicit offers or enter into bargain, not contractual offers themselves); *Hartle* v. *U.S.,* 18 Cl.Ct. 479, 483 (Ct. Cl. 1989) (Advertisements are not considered offers and may not, without more, be part of any ensuing contract); *Hoon* v. *Pate Construction Co.*, 607 So.2d 423, 425-26 (Fla.App.1992), *cert. denied*, 618 So.2d 210 (Fla.1993)(same); *Chang* v. *First Colonial Sav. Bank*, 242 Va. 388, 391, 410 S.E.2d 928 (Va. 1991) (Newspaper advertisements are not offers, but are merely invitations to bargain); *Kane* v. *League of Oregon Cities*, 66 Or.App. 836, 840-41, 676 P.2d 901, *review denied*, 296 Or. 829, 679 P.2d 1366 (1984)(same); *Anderson* v. *Board, etc., of Public Schools*, 122 Mo. 61, 27 S.W. 610 (Mo. 1894) (An advertisement is nothing more than an excuse to induce offers of a contract by others and imposes no liability); *I & R Mechanical, Inc.* v. *Hazelton Mfg. Co.*, 62 Mass.App.Ct. 452, 455, 817 N.E.2d 799 (Mass. App. Ct. 2004) (Advertisements, price quotations, and price lists generally do not constitute offers but are instead usually considered requests for offers or invitations to negotiate); *Bourke* v. *Kazaras*, 746 A.2d 642, 644 - 45 (Pa. Super. Ct. 2000) (Advertisements generally do not constitute offers and may only be regarded as offers if they contain some language of commitment or some invitation to take action without further communication; without such language, advertisements are merely invitations to the public to enter into negotiations which may subsequently result in an offer and an acceptance); *Osage Homestead, Inc*. v. *Sutphin*, 657 S.W.2d 346, 352 (Mo. Ct. App. 1983) (Newspaper advertisement in general language sent to all persons interested in particular trade or business is construed as an "invitation to make an offer" and understood to be requests to consider and examine and negotiate and no one can reasonably regard them otherwise unless the circumstances are exceptional and the words used are very plain and clear).

[11]While Trell alleges that this was a breach of an already formed contract, as stated above, such legal characterization of this fact is not to be accepted as true.

[12]*See also Levinson* v. *U.S.*, 258 U.S. 198, 201 (1922) (Bid was offer and acceptance of bid (continued...)

distinction requiring a different analysis or result merely because the advertisement was soliciting ideas (*i.e.*, "news tips") rather than goods, or because it was communicated over the internet as opposed to through television, radio or newspaper advertisement.

There is a very narrow and limited exception to this rule, but it is rarely applied and only in exceptional circumstances where the advertisement clearly communicates an offer that is definite, explicit and leaves nothing open for negotiation. *Zanakis-Pico* v. *Cutter Dodge, Inc.,* 98 Haw. 309, 324, 47 P.3d 1222, 1237 (Haw. 2002); *Chang* v. *First Colonial Sav. Bank*, 242 Va. 388, 391, 410 S.E.2d 928 (Va. 1991); *Ziglin* v. *Players MH, L.P.*, 36 S.W.3d 786, 789 (Mo. Ct. App. 2001); *Osage Homestead, Inc.* v. *Sutphin*, 657 S.W.2d 346, 352 (Mo. Ct. App. 1983). There is nothing alleged in the Amended Complaint which could reasonably be construed to apply this exception. Further, plaintiff's argument that the advertisement should be considered as an offer of reward, which is akin to this type of exception, is

_____

[12](...continued)
formed binding contract); *Group One, Ltd.* v. *Hallmark Cards, Inc.*, 254 F.3d 1041, 1048 (Fed. Cir. 2001) (Mere advertising and promoting of a product may be nothing more than an invitation for offers, while responding to such an invitation may itself be an offer)*; Brown* v. *1995 Tenet ParaAmerica Bicycle Challenge,* 959 F. Supp. 496, 500 (N.D.Ill. 1997) (Response to advertisement, not advertisement itself, is offer); *Zanakis-Pico* v. *Cutter Dodge, Inc.,* 98 Haw 309, 323, 47 P.3d 1222, 1236 (Haw. 2002) (Rather than make an offer, advertisements invite offers by prospective purchasers; only when the merchant takes the money is there an acceptance of the offer to purchase); *S.S.I. Investors Ltd.* v. *Korea Tungsten Min. Co., Ltd.*, 80 A.D.2d 155, 158, 438 N.Y.S.2d 96 (1st Dept.1981) (Solicitation of bids, through advertising or other media, constitutes merely request for offers; once offers are tendered, seller has option to accept or reject any or all of them).

unpersuasive and inapplicable to the solicitation for news tips.  There is simply nothing in the Amended Complaint which could reasonably be construed to support a holding that this advertisement was an offer of prize or reward.

Lastly, even if the Court were to find that the advertisement constituted a valid offer or unilateral contract, defendants' arguments regarding lack of definiteness and failure to properly plead acceptance or breach would be persuasive and the contract claim dismissed on those grounds, substantially for the reasons as stated in defendants' memorandum of law (Dkt. #8-2, pp. 10 - 12).

<u>The other claims</u>

Utilizing the same factual allegations which underlie the contract claim, the Amended Complaint attempts to state claims on a variety of other tort theories which are based on fraud.  Specifically, the Second cause of action alleges that the representations in the advertisement that *Science*NOW's news team would investigate any submitted news tips was "materially false, fraudulent, and misleading and contained omissions of material facts which, upon information and belief, were well known to defendant and was made to induce members of the general public to submit confidential and/or news breaking information to defendant *Science*NOW for its unfettered perusal and benefit.", constituted "unfair trade", "deceptive commercial practice" and "commercial misappropriation of plaintiff's property rights in the manuscript he submitted".  The Third cause of action reasserts the claim of misappropriation and conversion.  The Fourth cause of action claims that

defendants breached a fiduciary duty it owed to him by disclosing the manuscript to defendant Mackenzie for review.  The Fifth cause of action claims unfair competition because of this alleged fraud, misappropriation and breach of fiduciary duty.  The Sixth cause of action reasserts the claims of unfair competition, breach of fiduciary duty and commercial conversion.  The Seventh cause of action claims that Mackenzie's response to his manuscript was "obviously and blatantly erroneous, insidiously disparages the work of plaintiff" and alleges that defendants conspired to engage in 'scientific misconduct' which caused plaintiff severe mental distress, personal anguish and humiliation entitling him to punitive damages.

Initially, the Court finds that any of the causes of action which assert a claim of fraud (which the Court generously construes to be contained in the Second and Fifth causes of action) must be dismissed as redundant because, even construing the allegations in a light most favorable to plaintiff, it is clear that each of the claims in the Amended Complaint arises out of the same facts as the breach of contract claim.

> "[U]nder New York law, where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract.  In other words, simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim."

*Telecom Int'l America, Ltd.* v. *AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001)(internal citations and quotation marks omitted); *Guilbert* v. *Gardner,* 480 F.3d 140, 148 (2d Cir. 2007)*; Rosenblatt* v. *Christie, Manson & Woods Ltd.*, 2005 WL 2649027 at *10 - 11 (S.D.N.Y. 2005); *Paul T. Freund Corp.* v. *Commonwealth Packing Co.*, 288 F. Supp. 2d 357, 371 - 72 (W.D.N.Y. 2003); *see also Stewart v. Maitland*, --- N.Y.S.2d ---, 2007 WL 1080004 (1st Dept. April 12, 2007); *Coppola v. Applied Elec. Corp.,* 288 A.D.2d 41, 42, 732 N.Y.S.2d 402 (1st Dept. 2001).  Further, dismissal of plaintiff's breach of contract claim does not alter the conclusion that the fraud claim is duplicative.  *Rosenblatt, supra* at 11 (*citing River Glen Assocs.* v. *Merrill Lynch Credit Corp.*, 295 A.D.2d 274, 275 (1st Dept. 2002), and *Morgan* v. *A.O. Smith Corp.*, 265 A.D.2d 536, 536 (2d Dept.1999), *lv. to appeal denied,* 95 N.Y.2d 758 (2000).

Regardless of whether the fraud claim is to be dismissed as duplicative, the Court further finds the Amended Complaint to be critically lacking in fact and altogether based on conclusory allegations and legal conclusions with respect to each of the remaining causes of action (Second through Seventh), including the ones for fraud.  Without discussing each in particular, the Court finds that there is a failure to sufficiently plead several of the essential elements of each and every cause of action therein or, at best, Trell's attempt to plead them amounts to nothing more than conjecture and conclusion, without any basis in fact.  Appreciably for the reasons stated in defendants' Memoranda in support of this motion, the Court finds that

Trell's remaining causes of action fail to state a claim upon which relief can be granted (See Dkt. #8-2, pp. 12 - 17; #14, pp. 4 - 8) and will be dismissed.

*The motion for an order transferring the case*

Because the Amended Complaint shall be dismissed, defendants' request for an order pursuant to 28 U.S.C.§1404, for transfer of the case to the District of Columbia on *forum non conveniens* grounds need not be addressed.

## CONCLUSION

For the reasons stated above, it is hereby **ORDERED** that defendants' motion to dismiss (Dkt. #8) is GRANTED and the Amended Complaint herein is dismissed in its entirety.  The Clerk of the Court is directed to take all appropriate steps to close this case.

DATED:      Buffalo, N.Y.

May 18, 2007

_____
     /s/ John T. Elfvin
     JOHN T. ELFVIN
     S.U.S.D.J.